WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART:
While I agree with the majority that this case needs to be remanded to the trial court for a hearing regarding Woodall's alleged intellectual disability, I respectfully dissent to its holding that KRS 532.130(2) is unconstitutional. The issues addressed by the majority opinion are good and reasonable resolutions as to future scientific or medical developments. However, the statute the majority overturns as unconstitutional currently complies with the DSM-5 (Diagnostic and Statistical Manual of Mental Disorders [DSM-5] published by the American Psychiatric Association) which is an established diagnostic standard. The prevailing medical consensus at any given time is subject to debate and would be difficult for trial courts to determine; however, the established diagnostic standards as set forth in the DSM-5 are undoubtedly accepted. It is simply too speculative to declare the statute unconstitutional due to the fact it may not comply with future medical or scientific discoveries. Therefore, I dissent.
I agree with the majority that flexibility to accommodate scientific development and changes is desirable. However, I do not believe there is a necessity to declare the statute unconstitutional on these grounds. The majority says the statute is unconstitutional regarding the death penalty because *8 it uses a specific numerical floor for a defendant's IQ. However, since the statute complies with the DSM-5 guidelines, I would not go to the extreme measure of striking it.
Here, the score of 70 provides a floor for determining intellectual capacity for execution. Any defendant whose IQ falls below that floor is not subject to execution. However, the trial court still has a place in making the determination of intellectual disability for a defendant whose IQ scores above 70. Here, a psychiatrist testified Woodall was intellectually disabled. This testimony was enough to establish a prima facie showing, requiring the trial court to conduct a hearing and take proof from Woodall as to his disability.
Once a defendant establishes a prima facie case that he is ineligible for the death penalty due to an intellectual disability, then the trial court must conduct a full hearing to resolve the issue. Since this is a defense, it must be raised and proven by the defendant. A defendant would have to fully cooperate with an examination by the Commonwealth's expert in order that an adequate hearing could be conducted before the defendant could rely upon the defense. White v. Commonwealth, 500 S.W.3d 208, 210 (Ky. 2016) At the hearing, if the defendant has established a prima facie case that he is intellectually disabled and if he has fully cooperated with the Commonwealth's expert's examination then the burden of proof shifts to the Commonwealth to prove Woodall's capacity to be executed. "It is now elementary that the burden is on the government in a criminal case to prove every element of the charged offense beyond a reasonable doubt and that the failure to do so is an error of Constitutional magnitude." Miller v. Commonwealth, 77 S.W.3d 566, 576 (Ky. 2002).
Each element of a criminal case must be proven beyond a reasonable doubt and there can be factors that vary the score. The trial court must consider all the variables in determining if the defendant is intellectually disabled. An example of such a factor that may affect the outcome is the margin of error, which this court ruled in White must be considered. Scientific evidence establishes that the current margin of error for the examination is 5 points above or below 70. Based upon the margin of error, an individual with a score of 66 might not be intellectually disabled, while someone with a score of 75 might be so disabled. Therefore, proof beyond a reasonable doubt requires a score of 76 to establish proof that a defendant is not intellectually disabled. This is the current established margin of error for the test. However, as testing improves the margin might decrease or additional scientific evidence might enlarge it. A trial court must consider the variable of the margin of error and any other variables that may prove or disprove intellectual disability beyond a reasonable doubt.
The statute complies with the current diagnostic standards, and trial courts must take other proof as to intellectual disability to determine whether a prima facie case is established. After a prima facie case is presented, the trial court must hold a hearing to determine beyond a reasonable doubt that a defendant is eligible for the death penalty.
The majority needlessly declares the statute at question unconstitutional, as the hearing outlined above resolves the issues with the statute that form the basis for the majority declaring it unconstitutional. Therefore, I do not believe this Court should take the extreme measure of declaring the statute unconstitutional. Woodall's constitutional rights are safeguarded by the hearing that will be conducted on remand without striking a statute enacted by the General Assembly.
Minton, C.J.; Hughes, Keller, VanMeter, Venters, and Wright, JJ., sitting. All concur. Cunningham, J., not sitting.